**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**DAVID JONES**                                                    **PLAINTIFF**
*ADC #111448*

**v.**                                   **No: 4:24-cv-00126 JM/PSH**

**JUDE OGBOZOR**                                                  **DEFENDANT**

**PROPOSED FINDINGS AND RECOMMENDATION**

**INSTRUCTIONS**

The following Recommendation has been sent to United States District Judge James M. Moody, Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**DISPOSITION**

**I. Introduction**

Plaintiff David Jones filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 on February 12, 2024, while incarcerated at the Arkansas Division of Correction's Varner Supermax Unit. Doc. No. 2. Jones sues Sergeant Jude Ogbozor in his official and individual capacities. *Id.* at 2. He alleges that Ogbozor intentionally slammed his fingers in a food trap door on September 5, 2023, crushing his right middle finger

and severing the top of his right ring finger.  *Id.* at 4.  Jones seeks punitive and compensatory damages.  *Id.* at 5.

Before the Court is a motion for summary judgment, supporting brief, and statement of undisputed material facts filed by defendant Ogbozor (Doc. Nos. 27-29).  Ogbozor filed an amended statement of undisputed material facts on December 25, 2025 (Doc. No. 33).  Jones did not file a response to Ogbozor's motion or amended statement of facts.  Because Jones failed to controvert the facts set forth in Ogbozor's statements of undisputed facts, Doc. Nos. 28 & 33, those facts are deemed admitted.  *See* Local Rule 56.1(c); Fed. R. Civ. P. 56(e)(2) (providing that the court can consider a fact undisputed when a party "fails to properly address another party's assertion of fact as required by Rule 56(c)").[1]  Ogbozor's statements of facts, and the other pleadings and exhibits in the record, establish that the material facts are not in dispute and that Ogbozor is entitled to summary judgment as a matter of law.

## II.  Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ.

---

[1] Jones' status as a *pro se* litigant does not excuse him from following the Court's local rules.  *See Beck v. Skon,* 253 F.3d 330, 333 (8th Cir. 2001) (stating that a plaintiff's *pro se* status does not excuse him from responding to a motion for summary judgment "with specific factual support for his claims to avoid summary judgment[ ]") (citing Fed. R. Civ. P. 56(e)); *Bunch v. Univ. of Ark. Bd. of Trs.,* 863 F.3d 1062, 1067 (8th Cir. 2017) (same).

P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).  When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).  The nonmoving party may not rely on allegations or denials, and must instead demonstrate the existence of specific facts that create a genuine issue for trial.  *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).  The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.  *Id.* (citations omitted).

An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .".  Fed. R. Civ. P. 56(c)(1)(A).  A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(B).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case.  *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012).  Disputes that are not

genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

In *Reed v. City of St. Charles, Mo.*, 561 F.3d 788 (8th Cir. 2009), the Eighth Circuit Court of Appeals discussed the requirement that facts be viewed in the light most favorable to the nonmoving party when considering a motion for summary judgment. The Court stated, "[i]f 'opposing parties tell two different stories,' the court must review the record, determine which facts are material and genuinely disputed, and then view those facts in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them." *Id.* at 790 (*quoting Scott v. Harris*, 550 U.S. 372, 380 (2007)).

### III. Undisputed Facts[2]

1.      Jones is an inmate at the ADC's Varner Super Max Unit ("VSM").

2.      On February 12, 2024, Jones filed this lawsuit against Ogbozor, alleging that Ogbozor intentionally slammed his hand in a trap door on September

---

[2] The undisputed facts were submitted by Ogbozor and are supported by the following documents attached to Ogbozor's motion for summary judgment: the Deposition Testimony of Jones (Doc. No. 27-1) (the "*Jones Deposition*"); the Declaration of Ogbozor (Doc. No. 34) (the "*Ogbozor Declaration*"); the Declaration of Jamesha Madden (Doc. No. 27-3) (the "*Madden Declaration*"); the Declaration of Warden James Gibson (Doc. No. 27-4) (the "*Gibson Declaration*"); the September 5, 2023 Incident Report (Doc. No. 27-5) (the "*Incident Report*"); Jones' Medical Records (Doc. No. 27-6) ("*Medical Records*"); Trap Door Photographs (Doc. No. 27-7) ("*Door Photographs*"); and Photographs of Jones' hand taken on March 4, 2025 (Doc. No. 27-8) ("*March 4, 2025 Photographs*"). Opinions, legal conclusions, and immaterial facts are omitted.

5, 2023.  Doc. No. 2.

3.    On the day of the incident, Jones was assigned to Cell #561 in Cellblock 5, Zone 4 in extended restrictive housing.  *Jones Deposition* at 11: 17–20;  *Ogbozor Declaration* at ¶ 5; *Incident Report* at 6.

4.    Ogbozor is employed by the ADC and was working the night shift at the VSM on September 5, 2023, where he was assigned to work Isolation Zones 1 through 4. *Ogbozor Declaration* at ¶¶ 1, 3.

5.    The ADC uses a secure metal hatch known as a "trap door" or "food trap" on most cell doors in the restrictive housing units.  The trap doors are designed to let officers pass food trays, retrieve items, and apply handcuffs or other restraints to inmates while minimizing risks to staff and maintaining security of the unit. *Gibson Declaration* at ¶ 2.

6.    The trap door is made of heavy-duty steel and is installed on the lower portion of the cell door. The trap door is hinged at the bottom and opens outward and downward. When closed, it locks securely into place through a metal latch or bolt mechanism.  *Gibson Declaration* at ¶ 3; *Door Photographs*.

7.    Cell #561 had this type of trap door.  *Door Photographs; Gibson Declaration* at ¶ 5.

8.    It is not uncommon for staff to have to press or push a little harder to close the trap door fully, particularly if the hinges or locking mechanism have been

affected by paint buildup, routine wear and tear, rust, or minor misalignment. This does not mean that the trap door is broken or malfunctioning. *Gibson Declaration* at ¶ 4; *Door Photographs*.

9. At approximately 9:35 p.m., Ogbozor approached cell #561 as part of cell cleanup operations. *Jones Deposition* at 9:7; *Ogbozor Declaration* at ¶¶ 4-5; *Incident Report* at 6.

10. According to Ogbozor, Jones stated that he should not be in cellblock 5 and that the ADC was "full of bulls**t." *Ogbozor Declaration* at ¶ 7; *Incident Report* at 6 & 15.

11. Ogbozor reported that Jones refused direct orders to step away from the trap door so that he could close it, but Jones refused and then placed his whole right hand outside trap which prevented Ogbozor from closing it. *Ogbozor Declaration* at ¶ 8.

12. After giving Jones several more direct orders to step away from the trap door, he complied and stepped away. *Ogbozor Declaration* at ¶ 9; *Incident Report* at 6.

13. According to Ogbozor, Jones suddenly and without warning stuck his fingers back into the opening as Ogbozor was in the process of closing the trap door, causing the trap door to close on Jones' fingers. *Ogbozor Declaration* at ¶ 10; *Incident Report* at 6.

14.     Ogbozor immediately radioed for assistance stating that Jones needed to be removed from his cell and needed medical treatment.  *Ogbozor Declaration* at ¶ 11; *Incident Report* at 6.

15.     Lt. Walter Washington and a nurse responded, and Jones was escorted to the treatment center for medical evaluation.  *Ogbozor Declaration* at ¶¶ 12–15; *Madden Declaration* at ¶ 4.

16.     While in the treatment area, Jones admitted in front of Lt. Washington and Capt. Madden that he had deliberately refused to allow the trap door to be closed.  *Ogbozor Declaration* at ¶ 16; *Madden Declaration* at ¶ 5.

17.     Jones was assessed and treated for fingertip injuries involving his right middle and ring fingers.  The medical report noted a severed tip of the right middle finger and a lacerated tip of the right ring finger.  *Incident Report* at 9 (Condensed Health Services Encounter dated 9/5/23); *Medical Records* at 218-219.

18.     Jones was issued a major disciplinary for tampering with a locking device, failing to obey direct orders, and insolence to staff.  *Incident Report* at 15; *Ogbozor Declaration* at ¶ 17.

19.     ADC policy prohibits inmates from placing their hands or arms near the trap door openings, a rule enforced for the safety of inmates and staff.  *Gibson Declaration* at ¶ 8.

20.     Jones was newly assigned to the VSM in June 2023, approximately

three months prior to the September 5, 2023 incident. *Jones Deposition* at 6:22–25, 15:14-15.  He and Ogbozor had not had any prior physical altercations or history of conflict with each other. *Id.* at 15:13–17.

21.     Photographs taken of Jones' right hand in March 2025—approximately 18 months after the incident—show that his fingers appear fully healed, with no visible deformity, scarring or indication that his fingertip was ever severed. *March 4, 2025 Photographs*.

22.      Jones' medical records from late 2023 through 2024 document that the injury to the tip of his right ring finger healed without complication.  Providers repeatedly noted no redness, no edema, no infection, full range of motion, and an intact nail bed with no visible deformity. *Medical Records* at 11-12, 15, 17-19 & 21-28 (encounter dates: 11/03/2023, 11/21/2023, 01/23/2024, 06/10/2024, 12/8/2024, and 12/13/2024).

23.     Jones' treating medical providers did not find a surgical referral necessary and determined that in-house follow-up was sufficient to manage his injury. *Medical Records* at 19-22 (encounter date: 12/22/2023, noting "no medical indications for orthopedic follow up: will FU in house").

24.     While Jones reported intermittent nerve pain following the injury, his condition was treated conservatively with medication and did not result in any long-term functional impairment. *Medical Records* at 11-12 & 17-19 (entries from 2024

indicating use of nortriptyline and duloxetine for nerve-related pain management and documentation of full range of motion).

### IV. Analysis

#### A.    Sovereign Immunity

Ogbozor correctly asserts that Jones' monetary claims against Ogbozor in his official capacity are barred by sovereign immunity.  A suit against a defendant in his or her official capacity is in essence a suit against the State of Arkansas, and any official capacity claim for monetary damages against that defendant is barred by the doctrine of sovereign immunity.  *Will v. Michigan Department of State Police, et al.*, 491 U.S. 58, 71 (1989)*; Nix v. Norman*, 879 F.2d 429, 431-432 (8th Cir. 1989). Accordingly, the undersigned recommends that Ogbozor's motion for summary judgment be granted and Jones' official capacity claims be dismissed.

#### B.    Qualified Immunity

Ogbozor argues he is entitled to qualified immunity with respect to Jones' individual capacity claims.  Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  Qualified immunity is a question of law and is appropriately resolved on summary judgment. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).  To determine whether a defendant is

entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct. *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015). Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Although Jones alleged that Ogzobor intentionally slammed the trap door on his finger, causing his middle finger to be crushed and the tip of his ring finger to be severed, the facts submitted by Ogzobor are deemed admitted and therefore undisputed. *See* Local Rule 56.1; Fed. R. Evid. 56(e); *Beck v. Skon, supra.* Ogzobor's contention that Jones stuck his hand through the trap as Ogzobor was trying to close it is also corroborated by the incident report and a declaration by Madden, stating that Jones admitted he stuck his hand through the trap preventing it from closing. Additionally, Jones' medical records show that although his fingers were injured, they have since healed, indicating the injuries were not as serious as he alleged. Jones did not respond to the motion for summary judgment and therefore did not dispute these facts or provide any evidence to support his version of what happened. *See Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010) (quoting *Flentje v. First Nat'l Bank of Wynne,* 340 Ark. 563, 11 S.W.3d 531 (2000) ("When

the movant makes a prima facie showing of entitlement to a summary judgment, the respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.").

Because the admitted facts establish that Ogzobor did not intentionally apply force to Jones on the date in question,[3] there is no issue for trial, and summary judgment is appropriate with respect to Jones' excessive force claim.

## IV.   Conclusion

Jones' official capacity claims for money damages are barred by the doctrine of sovereign immunity.  Further, Ogbozor is entitled to qualified immunity on Jones' individual capacity claims because the undisputed material facts show that Ogbozor did not use excessive force against Jones.  Accordingly, Ogbozor's motion for summary judgment (Doc. No. 27) should be GRANTED, and Jones' claims against him be DISMISSED WITH PREJUDICE.

DATED this 14th day of January, 2026.

_____
UNITED STATES MAGISTRATE JUDGE

---

[3] *See Crow v. Montgomery*, 403 F.3d 598, 602 (8th Cir. 2005) (explaining that intentional conduct, rather than negligence, is required to sustain a § 1983 claim).